**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Peter Strojnik,

            Plaintiff,

v.

Ashford Scottsdale LP,

            Defendant.

No. CV-20-02352-PHX-DWL

**ORDER**

## INTRODUCTION

Over the last decade, Plaintiff Peter Strojnik ("Strojnik") has been personally responsible for the filing of hundreds, if not thousands, of meritless lawsuits. In general, these "cookie-cutter lawsuits" with inadequate allegations have involved the assertion of claims under the Americans with Disabilities Act ("ADA") against small businesses. *Advocates for Individuals with Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 891, 893 (D. Ariz. 2017) ("Template complaints filled with non-specific allegations have become the stock-in-trade of attorney[] Peter Strojnik" who, in conjunction with others, "pursued upwards of 160 cookie-cutter lawsuits in federal court and, from early to later 2016, more than 1,700 such suits in Arizona state court").

Initially, Strojnik filed these ADA lawsuits in his capacity as an attorney, but he was disbarred by the Arizona State Bar in 2019. The notice of disbarment explained that Strojnik's *modus operandi* was to engage in "'extortionate' and 'ethically suspect' misconduct" by asserting "vague violations" and then "demand[ing] approximately $5,000

in attorney's fees regardless if the business remedied the purported violations."  *See* State Bar of Ariz., https://azbar.legalserviceslink.com/attorneys-view/PeterStrojnik (last visited May 17, 2021).

Next, Strojnik began bringing ADA lawsuits in federal court as a *pro se* plaintiff. Those lawsuits were routinely dismissed for lack of standing, and in 2020, Strojnik was declared a vexatious litigant by the United States District Courts for the Northern and Central Districts of California.  *Strojnik v. IA Lodging Napa First LLC*, 2020 WL 2838814, *13 (N.D. Cal. 2020) ("Strojnik's litigation tactics are frivolous and harassing."); *Strojnik v. SCG Am. Construction Inc.*, 2020 WL 4258914, *7-8 (C.D. Cal. 2020) (finding, in the course of making vexatious-litigant finding, that "Strojnik's propensity for filing a multitude of disability discrimination cases, particularly against hotel defendants, is very well known," that "countless courts have questioned Strojnik's motives in pursuing the litigation and whether he has a good faith basis for his claims," and that "Strojnik's history contains countless filings of frivolous complaints and instances of directly ignoring court orders").

Strojnik's latest strategy is to file *pro se* ADA lawsuits in Arizona state court.  His apparent rationale for doing so is that he believes state-law standing requirements are favorable to him in a way that the federal courts' standing requirements are not.[1]  Many of the targets of these lawsuits have responded by removing the action to federal court, based on the presence of a federal claim (*i.e.,* the ADA claim), and then moving to dismiss based on a lack of standing.  *Strojnik v. Driftwood Hospitality Mgmt. LLC*, 2021 WL 50456, *8-9 (D. Ariz. 2021) ("As of December 19, 2020, Mr. Strojnik claims to have filed 64 cases with ADA claims in Arizona superior courts . . . [and] twenty-two of Mr. Strojnik's *pro se* ADA cases have been heard in this District since his disbarment after they were removed from state court").  Strojnik has not only resisted these efforts but gone on the offensive, seeking sanctions against opposing counsel.  (*See, e.g.,* Doc. 15.)  Such tactics prompted

---

[1]    Strojnik expressed this belief during a deposition in a different case.  (Doc. 19-1 at 38-39 [Q: "Is there any reason why you filed in state court rather than federal court."  A. "State constitutions don't have Article 3 of the Constitution."].)

the District of Arizona to declare Strojnik a vexatious litigant in January 2021. *Driftwood Hospitality*, 2021 WL 50456 at *10 ("The Court finds that Mr. Strojnik harasses and coerces parties into agreeing to extortive settlements . . . [and] finds Mr. Strojnik's litigation tactics frivolous and harassing.").

This action represents more of the same. Strojnik initiated this *pro se* lawsuit in October 2020 by filing a complaint in Maricopa County Superior Court. (Doc. 1-1 at 2-39.) The complaint names one defendant, Ashford Scottsdale LP, doing business as Courtyard by Marriott Scottsdale Old Town ("Ashford"). (*Id.*) It asserts an ADA claim and five state-law claims. (*Id.*) In December 2020, Ashford removed the action to federal court. (Doc. 1.) Because the removal occurred before the District of Arizona's vexatious litigant order took effect in January 2021, it is not subject to the bond and screening requirements set forth in that order. Thus, this Court must address whether and how it may proceed.

To that end, Ashford has now filed a motion to dismiss for lack of subject-matter jurisdiction. (Doc. 19.) Ashford not only argues that Strojnik lacks standing to pursue his claims, because he has not suffered an injury in fact, but argues that dismissal is the appropriate remedy because a remand to state court would be futile. (*Id.*) Strojnik opposes the motion and separately seeks permission to remand one of his state-law claims (Doc. 9) and/or to amend his complaint (Doc. 20).

For the following reasons, Ashford's motion to dismiss is granted and Strojnik's motions are denied. Having been disbarred once, and been declared a vexatious litigant thrice, for making variants of the same arguments presented in this case, Strojnik cannot establish that remanding this action for further litigation in state court would be anything other than an exercise in futility. Enough is enough. This judicial equivalent of whack-a-mole must stop.

…

…

…

**RELEVANT BACKGROUND**

I.   The Allegations And Claims In The Complaint

On October 6, 2020, Strojnik initiated this action in Maricopa County Superior Court.  (Doc. 1-1 at 2-39.)

The complaint contains an array of allegations intended to establish that Strojnik is disabled.  For example, it alleges that Strojnik is "a disabled person as defined by the ADA Amendment Act" because he "suffer[s] from the following physical disabilities: prostate cancer, genitourinary impairment, renal cancer, severe right-sided neural foraminal stenosis with symptoms of femoral neuropathy, missing right knee ameliorated with a prosthesis, limitation on the use of both shoulders, elbows and wrists, pleurisy, hyper blood pressure."  (*Id.* ¶¶ 9, 18.)  It further alleges that these physical disabilities "[a]ffect [his] neurological, musculoskeletal, respiratory, cardiovascular, reproductive and genitourinary body systems" and "[l]imit . . . the following major life activities: walking, standing, sitting, bending, sleeping, working, climbing stairs, kicking, jumping, twisting body, running, reaching, lifting, writing, working, twisting the wrist, shoulder and elbows, grasping, pushing, opening doors, breathing, getting in and out of a car, working, carrying stuff and other major life activities."  (*Id.* ¶ 19.)  As discussed in more detail below, the complaint also alleges that, "*[i]n their unmitigated, active state*," these "impairments require the use of a wheelchair."  (*Id.* ¶ 26, emphasis added.)

Next, the complaint contains various allegations concerning Strojnik's efforts to book a room at, and stay at, a hotel in Scottsdale, Arizona that is owned and operated by Ashford.  Specifically, the complaint alleges that, on an unspecified date, Strojnik "reviewed [Ashford's] booking website" in an attempt to determine whether the website "identifies and describes accessible features and guest rooms offered through its reservations service in sufficient detail to assess independently whether [Ashford's hotel meets Strojnik's] accessibility needs."  (*Id.* ¶ 29.)  The complaint further alleges that, "in reliance on the truth of the representations" appearing on the website, "and in further reliance on Ashford's self-identification as a 'Courtyard,' a Marriott brand," Strojnik

"booked and paid for an accessible room at the Hotel."  (*Id.* ¶ 32.)  Finally, the complaint alleges that, on the unspecified date when Strojnik visited the hotel, he "personally encountered [various] photographically documented conditions at the Hotel" that "affected [his] impairments . . . so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement."  (*Id.* ¶ 33.)  The complaint then contains a series of 19 photographs that include the following captions: "No access from street," "No handrails on left of ramp," "Improperly positioned handrails on right," "Closest parking to lobby not accessible," "Accessible parking slope too steep," "No marked passenger loading zone," "Out of reach snacks," "Out of reach sundry items," "Inaccessible check in counter," "Inaccessible business desk," "Inaccessible card reader for pool access," "Pool gate har[d]ware requires twisting of wrist action," "Inaccessible boarding pass counter," "Improperly configured hardware to room requiring twisting of the [wrist] action," "19 lbs to open door to room," "Deadbolt requires twisting of wrist," "Shower water scalding 136.8°F (over 120°F not permitted)," "No shut off control on spray unit," and "Toilet flush on wrong side."  (*Id.* at 13-32.)

Based on these allegations, the complaint asserts six claims.  The first is a claim under the ADA.  (*Id.* ¶¶ 34-39.)  The second is a state-law claim for "Negligence and Negligence Per Se," premised on the theory that "[e]very time" Strojnik "is required to negotiate a non-compliant element in [Ashford's] Hotel," he "suffers pain and physical discomfort that the regulation is designed to prevent."  (*Id.* ¶¶ 40-53.)  The third is a state-law claim for "Negligent Misrepresentation," premised on the theory that Ashford's booking website "supplied false information to [Strojnik] for guidance in [Strojnik's] business transaction, to wit: the renting of a hotel room."  (*Id.* ¶¶ 54-61.)  The fourth is what appears to be a state-law claim for "Failure to Disclose," premised on the theory that Ashford had a duty to make certain disclosures under 28 C.F.R. § 36.302(e)(1)(ii) related to its ADA compliance, failed to make those disclosures, and thereby caused Strojnik to suffer at least $35,000 in damages.  (*Id.* ¶¶ 62-70.)  The fifth is a state-law claim for "Common Law and Statutory Fraud," premised on the theory that Ashford made knowingly

1    false representations in connection with the sale or advertisement of merchandise.  (*Id.* ¶¶

2    71-84.)  The sixth is a state-law claim for "Consumer Fraud—Brand Deceit," premised on

3    the theory that "Ashford identifies itself as Courtyard, a Marriott Brand," but "Ashford is

4    not  Courtyard by Marriott.  It is Ashcroft [sic].  The misidentification is necessary because

5    [the] general public, including [Strojnik], identify Marriott properties with a higher degree

6    of lodging standard and general integrity than Ashford."  (*Id.* ¶¶ 85-94.)

7    II.    Procedural History

8          On December 4, 2020, Ashford removed this action to federal court.  (Doc. 1.)  The

9    notice of removal states that removal is permissible under 28 U.S.C. § 1441(a) because this

10   Court would have original jurisdiction over the ADA claim.  (*Id.* at 2.)

11         On December 11, 2020, Ashford filed an answer to the complaint.  (Doc. 8.)  Among

12   other things, the answer includes the affirmative defense that Strojnik "lacks standing under

13   Article III."  (*Id.* at 5 ¶ 2.)

14         On December 21, 2020, Strojnik filed a motion to remand Count Six of his

15   complaint, the "Consumer Fraud—Brand Deceit" claim, to state court on the ground that

16   it "has nothing in common with the predicate ADA claim; it is instead a wholly 'separate

17   and independent' claim subject to remand pursuant to 28 U.S.C. § 1441(c)."  (Doc. 9 at 1.)

18   This motion thereafter became fully briefed.  (Docs. 13, 14.)

19         On January 4, 2021, the District of Arizona declared Strojink a vexatious litigant.

20   *Driftwood Hospitality,* 2021 WL 50456 at *10.  Under the vexatious litigant order,

21         [W]ithin 21 days after an action is removed from state court to United States
22         District Court for the District of Arizona alleging violations of the Americans
         with  Disabilities  Act,  or  within  21 days  after  Mr.  Strojnik  amends  a
23         complaint before the United States District Court for the District of Arizona
         to  include  alleged  violations  of  the  Americans  with  Disabilities  Act,  Mr.
24         Strojnik shall post a bond for $10,000.  If after 21 days, Mr. Strojnik fails to
         post the bond, the Court will dismiss the case for failure to comply with this
25         Order.

26   *Id.* at *11.  However, because this case was removed before the vexatious litigant order

27   came into effect, and because Strojnik has not amended his complaint in this action since

28   the vexatious litigant order came into effect, the bond requirement has not been triggered.

1          On February 1, 2021, Strojink filed a motion in which he accused Ashford's counsel

2  of misconduct.  (Doc. 15.)  Specifically, Strojnik argued that Ashford's counsel had acted

3  inconsistently by first removing this action from state court and then disputing the existence

4  of subject matter jurisdiction.  (*Id.*)  Strojnik requested an order requiring Ashford's

5  counsel to "prove removal jurisdiction" and also requested the issuance of monetary and

6  other sanctions against Ashford's counsel pursuant to the All Writs Act.  (*Id.*)  Notably, in

7  the course of making these requests, Strojnik seemed to concede that this Court lacks

8  subject-matter jurisdiction over this action.  (*Id.* at 2, emphasis added ["The grounds for

9  this Motion are that Defendant's counsel . . . has engaged in a deceptive and manipulative

10  scheme of removing Plaintiff's civil rights claims from State Court to federal court *when*

11  *federal court does not have jurisdiction*."].)

12          On February 4, 2021, the Court issued an order denying Strojnik's motion.  (Doc.

13  16.)  In that order, the Court also solicited supplemental briefing on whether, given the

14  parties' seemingly mutual acknowledgement that subject-matter jurisdiction is lacking, the

15  appropriate remedy would be dismissal or remand.  (*Id.*)

16          Later that day, Strojnik filed a "Notice of Correction" in which he asserted that the

17  statements in his February 1, 2021 motion shouldn't be understood as a concession that

18  subject-matter jurisdiction is lacking.  (Doc. 17.)  The following day, the Court issued an

19  order noting that "[t]he inescapable implication" of the statements in Strojnik's motion was

20  "that Strojnik believes subject matter jurisdiction is lacking" because "[i]f Strojnik's

21  position is that he actually believes subject matter jurisdiction exists but just wants to make

22  his opponent go through the motions of proving it, this would be a frivolous waste of the

23  Court's time and a harassing litigation tactic."  (Doc. 18.)

24          On February 26, 2021, Ashford filed a motion to dismiss for lack of jurisdiction.

25  (Doc. 19.)

26          On February 28, 2021, Strojnik filed a response to Ashford's motion to dismiss.

27  (Doc. 20.)  In that filing, Strojnik also moved for leave to amend his complaint.  (*Id.*)

28          On March 15, 2021, Ashford filed a reply in support of its motion.  (Doc. 21.)

**DISCUSSION**

I.      Motion To Remand

        A.      **The Parties' Arguments**

        The first pending motion before the Court is Strojnik's motion to remand Count Six, his state-law claim for "Consumer Fraud—Brand Deceit," to state court.  (Doc. 9.) According to Strojnik, remand is required under 28 U.S.C. § 1441(c) because Count Six is "based on the common practice among hoteliers who purchase the rights to hold themselves out as a national hotel chain when in fact they are not a national hotel chain" and thus "has nothing in common with the predicate ADA claim" that provided the basis for removal. (*Id.* at 1.)  Put another way, Strojnik argues that "[t]here is no 'common nucleus' of operative facts between the ADA claim and" Count Six.  (*Id.* at 5.)

        Ashford opposes Strojnik's motion.  (Doc. 13.)  Ashford contends that the ADA claim and Count Six arise from a common nucleus of operative facts because "the events that gave rise" to both claims "occurred on the same day, at the same location, and with the same parties."  (*Id.* at 3.)  Ashford further contends that Strojnik's remand request is nothing more than a tactic "to force [Ashford] to incur additional fees and expenses litigating a two-front battle."  (*Id.* at 5.)

        In reply, Strojnik essentially repeats the arguments made in his motion.  (Doc. 14.)

        B.      **Analysis**

        Ashford has the better side of this issue.  Under 28 U.S.C. § 1441(c), when an action that has been removed from state court includes both "(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of § 1331 of this title), and (B) a claim not within the original or supplemental jurisdiction of the district court," the court must "sever" and "remand" the latter type of claim.  Thus, for Count Six to be subject to severance and remand under § 1441(c), it must be a claim falling outside this Court's original or supplemental jurisdiction.

        It is not.  To be sure, the Court lacks original jurisdiction over Count Six, by virtue of it being a state-law claim.  As for the existence of supplemental jurisdiction, the analysis

is governed by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus, the determinative question here is whether Count Six is "so related" to the one claim in this action over which the Court has original jurisdiction—the ADA claim in Count One—that they form part of the same case or controversy.

They are so related. As the Ninth Circuit has explained, "[n]onfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Trustees of Construction Industry & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003) (citations and internal quotation marks omitted). Here, Counts One and Six both arise from Strojnik's perusal of Ashford's advertising materials and subsequent booking of a stay at Ashford's facility. They both stem, in part, from alleged misrepresentations and omissions that Ashford made concerning the condition of its facility. Accordingly, they arise from the same common nucleus of operative fact and a plaintiff would ordinarily be expected to try them together. Other courts have reached the same conclusion. *See, e.g., Driftwood Hospitality*, 2021 WL 50456 at *6 ("Mr. Strojnik never explains how his 'brand deceit' claim arises from a separate nucleus of operative facts. As alleged in the Complaint, the claim arises from his investigations as an ADA Tester of Defendants' hotels, which are the same investigations that gave rise to his ADA and ADA-related claims. Therefore, the Court rejects Mr. Strojnik's contention that the brand deceit claim is not related. It clearly is."); *Strojnik v. C&H Kingman LLC*, 2021 WL 37516, *2 (D. Ariz. 2021) ("[A]ll of Mr. Strojnik's claims arise from a common nucleus of operative facts. The ADA, brand deceit, civil conspiracy, and aiding and abetting claims all stem from Mr. Strojnik's August 2020 visit to C&H's hotel and website.").

II.    Subject-Matter Jurisdiction

The Court next addresses Ashford's Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction.  (Doc. 19.)  Even if Ashford hadn't filed such a motion, the Court would "have an independent obligation to determine whether subject-matter jurisdiction exists."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  *See also* Fed. R. Civ. P. Rule 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").[2]

A.    **Legal Standard**

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact."  *Ader v. SimonMed Imaging Inc.*, 324 F. Supp. 3d 1045, 1048 (D. Ariz. 2018) (internal quotation marks omitted).  Here, Ashford brings both a facial and factual attack as to Strojnik's standing.  (Doc. 19 at 1.)

"[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  "[T]he irreducible constitutional minimum of standing contains three elements": (1) a concrete and particularized injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury would be redressed by a favorable decision.  *Id.* at 560-61.

B.    **The Parties' Arguments**

In its motion to dismiss, Ashford begins by questioning whether Strojnik is disabled.  (Doc. 19 at 3-5.)  Next, Ashford argues that, even assuming Strojnik is disabled, he lacks standing to assert his ADA claim because, although the complaint identifies 19 "purported ADA violations," each "would only potentially be a barrier . . . to someone navigating the property in a wheelchair" and Strojnik wasn't using a wheelchair when he visited the

---

[2]    Although the Court previously construed one of Strojnik's filings as a concession that subject-matter jurisdiction is lacking (Docs. 16, 18), Strojnik later disclaimed any such concession.  Thus, the Court has conducted an independent analysis of the issue here.

property.  (*Id.* at 5-6.)  Ashford elaborates:

> For example, in Paragraph 33 of his Complaint, Mr. Strojnik alleges that
> there is "no access from street," or "no handrails on left of wheelchair ramp"
> or an accessible parking space was "visually too steep."  None of these
> conditions affect him, however, because he does not use a wheelchair to
> navigate Defendant's property.  Other items he lists as too high, including
> snacks, sundry items, or the check-in counter.  None of these could deprive
> him from the [full] and equal enjoyment of the property, however, because
> he walked around the property and he is, according to him, six feet tall.  His
> other alleged violations follow a similar pattern.

(*Id.* at 9.)[3]  Finally, Ashford contends that Strojnik lacks standing to assert his state-law

claims because they "arose from (and depend on) his ADA claim," so "if his ADA claim

is dismissed, the state tort claims must be dismissed as well."  (*Id.* at 10.)

Ashford attaches several exhibits to its motion to dismiss.  One is a deposition

transcript from *Strojnik v. New Crescent Investments, LLC*, Case No. 20-cv-343-DJH (D.

Ariz.), another ADA case that Strojnik brought as a *pro se* litigant.  (Doc. 19-1 at 2-67.)

Strojnik's complaint in *New Crescent Investments*, like his complaint in this case,

contained a vague allegation that seemed to suggest he had been using a wheelchair during

his visit to the hotel in question.[4]  However, during his deposition in *New Crescent*

*Investments*, Strojnik admitted he hadn't been using a wheelchair during his visit.  (*Id.* at

---

[3]      The Court notes that some of the arguments set forth in Ashford's motion seem to
have been cut-and-pasted from motions filed in other cases.  For example, Ashford argues
that Strojnik's claim for monetary damages is unavailing in part because "Mr. Strojnik did
not make a reservation at Defendant's hotel and did not pay Defendant any money at any
time.  He has alleged that his monetary damages consist of the cost and expense of driving
his leased 2019 BMW 530 electric vehicle from his home to Defendant's hotel and his time
spent walking around Defendant's property on January 8, 2020."  (Doc. 19 at 6-7.)  These
may have been the facts in other cases involving Strojnik, but the complaint in this case
specifically alleges that Strojnik "booked and paid for an accessible room at the Hotel."
(Doc. 1-1 ¶ 32.)

[4]      As noted, Strojnik's complaint in this action contains the following allegation: "In
their unmitigated, active state, Plaintiff's impairments require the use of a wheelchair."
(Doc. 1-1 ¶ 26.)  The complaint also contains a photograph of a "government disability
placard" that depicts a wheelchair.  (*Id.* ¶ 23.)  In his complaint in *New Crescent*
*Investments*, Strojnik alleged that "[b]y virtue of his disability, Plaintiff requires an ADA
compliant Facility particularly applicable to his mobility, both ambulatory and wheelchair
assisted."  (Case No. 20-cv-343-DJH, Doc. 1-3 at 3 ¶ 11.)  The complaint in *New Crescent*
*Investments* is subject to judicial notice.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442
F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other
matters of public record.").

20.)   Additionally, Strojnik couldn't say that he had used "a cane or any sort of crutch" when walking around the property and admitted that he doesn't use a cane, crutch, or wheelchair at home.   (*Id.* at 20-21, 27.)[5]   Another exhibit is an independent medical evaluation ("IME") that was conducted in *New Crescent Investments*.   (*Id.* at 93-99.)   The doctor who conducted the IME concluded that Strojnik "ambulates relatively well with a very slight limp," "appears to be functioning well post right total knee arthroplasty," has "no evidence of positive nerve root tension signs," has "functional range of motion of his shoulders," and has an "adequate grip on both the right- and the left-hand side." (*Id.* at 99.)

Strojnik's response touches on the issue of standing in only superficial fashion. (Doc. 20 at 1-3.)   First, Strojnik accuses Ashford of displaying "confusion between motions to dismiss pursuant to Rule 12(b)(1) and 12(b)(6)."   (*Id.* at 2.)   Next, Strojnik provides a cursory overview of the facts of *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173 (9th Cir. 2021), and asserts without analysis that "District court has jurisdiction" here for the same reasons that the plaintiff's allegations in *Whitaker* were deemed sufficient to establish ADA standing.   (*Id.* at 2-3.)   Finally, and seemingly in the alternative, Strojnik "moves to amend the complaint pursuant to Rule 15 to enhance the claim pursuant to *Whitaker*, add parties and claims, and avoid yet another motion to dismiss by [Ashford]."   (*Id.*)   As for his state-law claims, Strojnik makes no effort to address the issue of standing.   Although he initially argues (before seemingly withdrawing the argument, *see* Part III *infra*) that a remand of

---

[5]      Strojnik objects to Ashford's submission of the deposition transcript from *New Crescent Investments*, arguing in cursory fashion that the deposition is "[i]rrelevant and [i]nadmissible" "pursuant to ARCP 32(a)(1)."   (Doc. 20 at 5.)   This objection fails for several reasons.   As an initial matter, Strojnik does not explain why the Arizona Rules of Civil Procedure would govern evidentiary rulings in this federal proceeding.   Nor does Strojnik explain why the cited Arizona rule would preclude consideration of the deposition transcript—in reply, Ashford argues that the transcript would be admissible under the Arizona rule.   (Doc. 21 at 8 n.1.)   At any rate, when (as here) a party brings a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), "the judge is authorized to take evidence and decide the jurisdictional facts" and "has discretion regarding the procedures it employs for the gathering and presentation of that evidence."   1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 12 (2021), at 309.   *See also Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) ("Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary.").   Here, the Court accepts the deposition transcript, the authenticity of which is unquestioned.

1    the state-law claims is preferable to dismissal of those claims (*id.* at 3-4), he offers no

2    specific analysis of the state-law claims and doesn't dispute Ashford's contention that they

3    are wholly derivative of his ADA claim.  (*Id.*)[6]

4        In reply, Ashford argues that "*Whitaker* does not help Mr. Strojnik's case, it

5    torpedoes it" because "unlike the plaintiff in *Whitaker*, Mr. Strojnik does not use a

6    wheelchair or an ambulatory aid during his hotel 'inspections' or in his home.  Thus, he is

7    unable to allege how the purported barriers to accessibility at [Ashford's] property (which

8    could only be barriers to someone in a wheelchair) have deprived him from fully accessing

9    the property."  (Doc. 21 at 2-4.)  Ashford also opposes Strojnik's request for leave to amend

10   because his proposed amended complaint still fails to allege how the purported barriers

11   would have prevented him from fully accessing the property.  (*Id.* at 4-6.)

12       C.    **Analysis**

13       The Court will begin by addressing Strojnik's standing to assert the ADA claim set

14   forth in Count One of the complaint.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

15   (2006) ("[O]ur standing cases confirm that a plaintiff must demonstrate standing for each

16   claim he seeks to press.").

17       The Ninth Circuit has "describe[d] in detail the standard for pleading standing

18   pursuant to an ADA claim."  *Whitaker,* 985 F.3d at 1179.  The seminal decision in this area

19   is *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (en banc).  There,

20   the Ninth Circuit held that "when an ADA plaintiff has suffered an injury-in-fact by

21   encountering a barrier that deprives him of full and equal enjoyment of the facility due to

22   his particular disability, he has standing to sue for injunctive relief as to that barrier and

23   other barriers related to his disability."  *Id.* at 944.  Critically, because the plaintiff in

24   *Chapman* simply "attached an accessibility survey to his complaint that identified multiple

25   ADA barriers" at the facility in question, without "connect[ing] the barriers to [his]

26   _____

27   [6]     The Court acknowledges that Strojnik argued, in his motion to remand, that Count
     Six is separate and independent from his ADA claim.  (Doc. 9.)  However, Strojnik does
     not seek to incorporate that argument by reference in his response to Ashford's motion to
28   dismiss.  Additionally, as noted in Part I above, Strojnik's argument on this point is
     unavailing.

disability or indicat[ing] which barrier or barriers he had personally encountered," the Ninth Circuit concluded he lacked standing. *Whitaker*, 985 F.3d at 1179 (citing *Chapman*, 631 F.3d at 954-55).

Similarly, in *O'Campo v. Bed Bath & Beyond of Cal., Inc.*, 610 F. App'x 706 (9th Cir. 2016), the Ninth Circuit held that the plaintiff "failed to sufficiently allege standing for his ADA claim" because, although the complaint identified "five alleged barriers" that might interfere with the full and equal access of a mobility-impaired person who required the use of a wheelchair, the plaintiff himself only "require[d] the use of a cane" and none of the barriers at issue would "impact a person who was standing up." *Id.* at 708.

In contrast, in *Whitaker*, the Ninth Circuit held that the plaintiff's allegations were "sufficient to establish injury-in-fact for purposes of standing" because he specifically alleged "that he uses a wheelchair for mobility, that he visited the defendant's premises, that he personally encountered a barrier related to his disability—inaccessible service counters—and that the barrier deters him from returning." 985 F.3d at 1179.

With this backdrop in mind, the issue of ADA standing in this case isn't a close call. Strojnik lacks standing to advance his ADA claim because he has not demonstrated an injury in fact. There is a certain irony in Strojnik's proffer of *Whitaker* as an opinion that supports his position. There, an ADA plaintiff *who used a wheelchair* had standing to assert an ADA claim because he alleged that, when visiting the defendant's facility, he "personally encountered a barrier"—an inaccessible service counter—that he couldn't access by virtue of his use of a wheelchair. 985 F.3d at 1179. Here, although Strojnik misleadingly notes that his physical conditions would require the use of a wheelchair "[i]n their unmitigated, active state" (Doc. 1-1 ¶ 26), he doesn't allege that he was actually using a wheelchair during his visit to Ashford's property. Moreover, Ashford has submitted undisputed evidence establishing that Strojnik doesn't use a wheelchair at all. In fact, the evidence establishes that Strojnik doesn't use any sort of walking aid and "ambulates relatively well with a very slight limp." Thus, Strojnik has not come close to establishing that he suffered any injury flowing from the conditions related to wheelchair accessibility

that are depicted in most of the pictures in the complaint.[7]

As an example, one of those pictures is of Ashford's convenience store. (Doc. 1-1 at 19.) It shows a cooler and various shelves stocked with chips and other snacks. (*Id.*) The caption provided by Strojnik reads: "Out of reach snacks." (*Id.*) Although it may be true that a guest in a wheelchair would have trouble reaching the snacks on the top shelf, the complaint does not allege that Strojnik had any trouble reaching the snacks and the Court has no trouble concluding that a guest in Strojnik's position (*i.e.,* a six-foot-tall adult who doesn't use a wheelchair or cane and ambulates relatively well with a very slight limp) would be able to easily satisfy all of his snacking needs. *Cf. O'Campo*, 610 F. App'x at 708 (ADA plaintiff lacked standing because, although the "five alleged barriers" might interfere with the full and equal access of a mobility-impaired person who required the use of a wheelchair, the plaintiff himself only "require[d] the use of a cane" and none of the barriers at issue would "impact a person who was standing up").

Finally, although the captions appearing below a few of the pictures in the complaint seem to suggest that the conditions at issue relate to wrist flexion rather than wheelchair accessibility (*see, e.g.,* Doc. 1-1 at 24 ["Pool gate hardware requires twisting of wrist action"]), Strojnik has not established an injury-in-fact as to those conditions, either. Although the complaint vaguely alleges that Strojnik suffers from an unspecified "musculoskeletal" condition that "[l]imits" a long litany of activities, including "twisting the wrist (*id.* ¶ 19), and further alleges that "[a]n encounter with a non-compliant operable part" of "doors, door opening and closing hardware, AC controls" will cause Strojnik "to experience pain and discomfort" (*id.* ¶ 28(g)(i)), the complaint provides no information whatsoever as to why the specific pieces of door hardware depicted in the complaint should be considered "non-compliant" or why they specifically interfered with Strojnik's use and enjoyment of the facility. Here, just as in *Driftwood Hospitality*, "[i]nstead of explaining how the alleged ADA violations prevent him from full and equal access to the hotels, Mr.

---

[7]    This analysis would remain the same even if the *New Crescent Investments* deposition transcript were disregarded. Nowhere in the complaint does Strojnik allege that he was using a wheelchair during his visit to Ashford.

Strojnik makes vague statements about his disabilities, and it is anybody's guess how the particular hotel features he photographs so meticulously actually impact him." 2021 WL 50456 at *5. It is also worth noting that the "pain and discomfort" Strojnik allegedly experiences during an "encounter" with non-compliant door parts is boilerplate language that appears in each of the ten subparts of ¶ 28(g), but most of those subparts appear to be unrelated to Strojnik's alleged disabilities. Additionally, the IME results that Ashford filed in support of its motion, to which Strojnik did not object, state that Strojnik has an "adequate grip on both the right- and the left-hand side." (Doc. 19-1 at 99.) Thus, Strojnik's wrist-related allegations are both facially insufficient to establish standing (because they are impermissibly vague and conclusory) and insufficient as a factual matter.

Turning to the state-law claims, Strojnik does not respond to—and thus implicitly accedes to—Ashford's argument that he lacks standing to advance them because they are derivative of his failed ADA claim. *Scott v. City of Phoenix*, 2011 WL 3159166, *10 (D. Ariz. 2011) ("Scott does not respond to this argument, and by failing to do so, Scott is deemed to have waived the issue."); *Reyes v. Wells Fargo Bank*, 2017 WL 11568871, *4 (C.D. Cal. 2017) (collecting cases); *Hurry v. Fin. Indus. Regul. Auth., Inc.*, 782 F. App'x 600, 602 (9th Cir. 2019) ("[F]ailure to respond to that argument constitutes waiver.").

Alternatively, even if Strojnik hadn't conceded the issue, Ashford is correct on the merits. It is obvious that four of Strojnik's state-law claims (his claims in Counts Two, Three, Four, and Five for negligence/negligence *per se*, negligent misrepresentation, failure to disclose, and fraud) all hinge on the notion that the accessibility barriers at Ashford caused him to suffer injury. They fail for the same reasons as his ADA claim. *Driftwood Hospitality*, 2021 WL 50456 at *5-6 ("Each [of the] remaining claims are different species of fraud and negligence, and they almost all rely on Defendants' alleged ADA violations. . . . ").

So, too, does Strojnik's remaining state-law claim—his claim in Count Six for "Consumer Fraud—Brand Deceit." As noted, the theory underlying this claim is that Ashford committed fraud by misrepresenting its connection with the Marriott brand.

Although this theory may not, at first blush, seem to have anything to do with ADA compliance, it is notable that the only allegation in the complaint as to why this alleged misrepresentation was harmful to Strojnik is because he identifies "Marriott properties with a higher degree of lodging standard and general integrity than Ashford." (Doc. 1-1 ¶ 88.) Elsewhere in the complaint, however, Strojnik doesn't raise any allegations concerning the overall quality and integrity of the lodgings at Ashford. He doesn't, for example, contend that the beds are lumpier than the typical Marriott bed or that the individual-sized soaps and shampoos are somehow substandard. Instead, the only allegations in the complaint that are remotely connected to the "lodging standard and general integrity" at Ashford are the allegations concerning ADA compliance. Thus, Strojnik lacks standing to pursue Count Six for the same reasons he lacks standing to pursue his ADA claim.

Finally, Strojnik's request for leave to amend is denied. Although courts should "freely" give leave to amend "when justice so requires," Fed. R. Civ. P. 15(a), courts may deny such leave when faced with "bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, as in *Driftwood Hospitality*, the Court concludes that, "[g]iven the chronic deficiencies in Mr. Strojnik's many complaints over the years and recent months, and the many opportunities he has had to rectify such deficiencies, . . . [he] makes his request for leave to amend in bad faith. Justice does not require leave to amend." 2021 WL 50456 at *6. Additionally, the Court concludes that the proposed amendments would be futile. The Ninth Circuit has repeatedly affirmed the denial, on futility grounds, of Strojnik's requests for leave to amend. *See, e.g., Strojnik v. Kapalua Land Co., Ltd.*, 801 Fed. App'x 531, 531-32 (9th Cir. 2020).

III.   Dismissal Or Remand

A.   **Background**

For the reasons discussed above, the Court lacks subject-matter jurisdiction over all of Strojnik's claims. Under 28 U.S.C. § 1447(c), the usual rule in a case that has been

removed from state court is that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." However, in a previous order, the Court noted the following:

> [I]n *Bell v. City of Kellogg*, 922 F.2d 1418 (9th Cir. 1991), the Ninth Circuit recognized an exception to this principle. Under *Bell*, when a district court "determines that it lacks subject matter jurisdiction in a removal case," it has discretion to dismiss, rather than remand, the action "[w]here the remand to state court would be futile." *Id.* at 1424. This is because "[d]istrict court resolution of the entire case," where there is no "conceivable" chance the plaintiff would succeed on remand, "prevents any further waste of valuable judicial time and resources." *Id.* at 1424-25. Although other Circuits have rejected *Bell*'s approach, holding that a remand is always required when a district court determines it lacks subject matter jurisdiction in a removal action, *Bell* remains good law in the Ninth Circuit. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1198 (9th Cir. 2016).

(Doc. 16 at 3.) Thus, the Court solicited supplemental briefing from the parties concerning the applicability of the *Bell* doctrine. (*Id.*)[8]

## B.    The Parties' Arguments

Ashford argues that dismissal is warranted under the *Bell* doctrine because a remand would be futile. (Doc. 19 at 1.) Ashford's essential point is that "Arizona courts impose a 'rigorous' standing requirement" and thus "a standing analysis under the Arizona Constitution leads to the same conclusion as a standing analysis under Article III." (*Id.* at 3, 7-8.) Additionally, Ashford notes that Arizona state courts have dismissed more than 1,700 of Strojnik's past lawsuits on standing grounds, which amounts to "a demonstrated history of being unable to bring accessibility claims that meet Arizona's 'distinct and palpable' standing requirements," and that other judges of this Court have previously declined to remand Strojnik's removal cases pursuant to the *Bell* doctrine. (*Id.* at 10-12.)

Strojnik's arguments concerning the applicability of the *Bell* doctrine are not a model of clarity. On the one hand, the introductory section of Strojnik's response includes

---

[8]    As the Ninth Circuit has acknowledged, *Bell*'s recognition of a futility exception is difficult to reconcile with "the literal words of § 1447(c), which, on their face, give no discretion to dismiss rather than remand an action." *Polo*, 833 F.3d at 1197-98 (citation and internal quotation marks omitted). Nevertheless, because *Polo* expressly declined to overrule *Bell*, it remains valid Ninth Circuit law. As such, it must be followed here. *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir. 1981) ("District courts are bound by the law of their own circuit. They are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.") (citation omitted).

1   the following statement: "If the district court dismisses the federal claim, it must leave state
2   law claims inviolate and remand them back to the superior court."  (Doc. 20 at 2.)  On the
3   other hand, in the body of his brief, Strojnik acknowledges that other judges of this court
4   have recently dismissed his claims (rather than remanding) pursuant to the *Bell* doctrine
5   and then offers the following statement: "Plaintiff finds it wasteful to spend time and
6   resources and simply moves on to amend."  (*Id.* at 4.)

7          In reply, Ashford notes that "Strojnik's everything-but-the-kitchen-sink Response
8   failed to address the fundamental question the Court originally posed to the parties: whether
9   remanding his lawsuit back to state court be 'futile' under *Bell*."  (Doc. 21 at 1.)  Ashford
10   further notes that "Strojnik does not even attempt to argue that his lawsuit could fit within
11   the narrow sliver of cases in which an Arizona court would potentially waive standing."
12   (*Id.*)

13          C.   **Analysis**

14          The Court agrees with Ashford that it would be futile to remand this action to state
15   court and therefore dismisses Strojnik's claims pursuant to *Bell*.  As an initial matter, the
16   Court interprets Strojnik's response brief as conceding that *Bell* applies.  Despite this
17   Court's invitation to provide supplemental briefing as to *Bell*'s applicability and Ashford's
18   extensive discussion of this issue in its motion to dismiss, Strojnik declined to provide any
19   reasoned argument on this issue in his response.  Instead, he declared it "wasteful to spend
20   time and resources" briefing the issue and then made a request for leave to amend.  But as
21   discussed in Part II above, that request has been denied.  Strojnik has identified no other
22   reason why *Bell* should be deemed inapplicable.

23          Even if Strojnik hadn't conceded the issue, dismissal would be warranted under
24   *Bell*.  The record before the Court is that Strojnik has been responsible for the filing of an
25   avalanche of meritless ADA-related lawsuits in recent years.  Nearly all of those lawsuits
26   have been dismissed based on a lack of standing.  Along the way, Strojnik has been
27   disbarred once, has been declared a vexatious litigant thrice, and has incurred the
28   opprobrium of innumerable judges who've been dismayed by his tactics.  Some of those

judges have made findings of futility under *Bell*. *MidFirst Bank*, 279 F. Supp. 3d at 895 ("This is even a better case for the futility doctrine than *Bell*."). True, Strojnik has succeeded in extracting lucrative settlements in some of his cases, but the presence of those settlement payments is hardly proof that the underlying claims weren't futile.

At most, Strojnik has shown that, on two occasions, state-court judges denied motions to dismiss his lawsuits based on a lack of standing. (Doc. 15 at 4 ["[T]he Maricopa County Superior Court has soundly rejected claims of lack of standing. Twice."].) But these two isolated data points do not tilt the futility analysis in Strojnik's favor. Strojnik's avoidance of dismissal at the pleading stage in a tiny fraction of his cases[9] is not a particularly impressive credential and Strojnik has tellingly not identified a single case in which he ever prevailed on the merits.

Furthermore, whatever his track record in other cases, the futility of a remand in this case is apparent. *Polo*, 833 F.3d at 1198 (under *Bell*, futility exists if there is an "absolute certainty that a state court would simply dismiss the action on remand") (cleaned up). Although the complaint largely identifies barriers at Ashford's facility that might interfere with a wheelchair-bound customer's ability to enjoy full and equal access to the facility, Strojnik wasn't using a wheelchair during his visit. The other identified barriers do not relate to Strojnik's alleged disabilities or relate to vaguely alleged disabilities that are undermined by the evidence. These details distinguish this case from the two state-court decisions cited by Strojnik. In one of those cases, the court specifically found that Strojnik's complaint "sufficiently correlate[d] the alleged violations to Plaintiff's alleged disabilities." (Doc. 15-1 at 2.) If anything, this decision hurts Strojnik's position because it confirms that Arizona courts (like federal courts) require a correlation between the barriers depicted in the complaint and the plaintiff's disabilities—a correlation that is lacking here. And in the other case, the defendant sought dismissal under the misguided theory that Strojnik's track record of dismissals in past cases was dispositive, without

---

9  Assuming that Strojnik has been responsible for filing around 2,000 ADA-related lawsuits, the two cited state-court decisions establish that he has succeeded at avoiding dismissal at the pleading stage in around 0.1% of his cases.

regard to the specific allegations in the complaint.  (Doc. 15-2 at 1 ["Defendant attached 15 exhibits, comprising 210 pages, in its Motion to Dismiss . . . [nearly all of which] were copies of court pleadings, or articles about court pleadings, in other ADA cases in which Plaintiff was a litigant. . . .  [I]t was clear that the Defendant's purpose for the exhibits was to show that Plaintiff has filed many ADA lawsuits, and that some of them have been dismissed. . . .  The underlying purpose of the exhibits is simply not relevant in a Rule 12(b)(6) proceeding."].)  Once again, this is hardly proof that an Arizona court would allow Strojnik's claims in *this* case to proceed, where the complaint does not establish that he suffered any harm from the complained-of conditions.  To the contrary, the Arizona courts have repeatedly dismissed Strojnik's lawsuits at the pleading stage based on this exact sort of deficiency.

Remanding the action under these circumstances would be futile because there is no conceivable chance that Strojnik would succeed on remand.  *Bell*, 922 F.2d at 1424-25.  Additionally, dismissal will promote the salutary goal of "prevent[ing] any further waste of valuable judicial time and resources."  *Id.*

Accordingly, **IT IS ORDERED** that:

1. Strojnik's motion to remand (Doc. 9) is **denied**.

2. Ashford's motion to dismiss (Doc. 19) is **granted**.

3. Strojnik's motion for leave to amend (Doc. 20) is **denied**.

4. The Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 18th day of May, 2021.

Dominic W. Lanza
United States District Judge